IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

IRENE PANAS, on behalf of
M.E.M., a minor,

       Plaintiff,

v.                                                   CIV 17-0364 WJ/JHR

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on Plaintiff Irene Panas' Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing with Supporting Memorandum (*Doc. 22*), filed September 5, 2017. Pursuant to 28 U.S.C. § 636(b), this matter has been referred to me for a recommended disposition. *Doc. 24*. Having reviewed the parties' submissions, the relevant law, and the relevant portions of the Administrative Record, the Court recommends that Plaintiff's Motion be denied.

## I. INTRODUCTION

Administrative Law Judge Barry O'Melinn ("the ALJ") determined that Plaintiff's seventeen year old daughter, M.E.M., is not disabled under the Social Security Act. In reaching this conclusion, the ALJ found that M.E.M. is less than markedly impaired in the six domains of functioning applicable to children's cases, and found less than credible statements offered by Plaintiff and M.E.M.'s father in support of her application. Plaintiff now appeals, asserting that the ALJ's findings as to the functional domains were unsupported by substantial evidence and that his findings as a whole are contrary to law. For the reasons that follow, the Court disagrees.

## II. DETERMINING DISABILITY FOR CHILDREN

An individual under the age of eighteen is disabled for the purposes of receiving Supplemental Security Income benefits under the Social Security Act if she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[,]" 42 U.S.C. § 1382c(a)(3)(C)(i); and she is not engaged in "substantial gainful activity."[1] 42 U.S.C. § 1382c(a)(3)(C)(ii); *see also* 20 C.F.R. § 416.906 (basic definition of disability for children). The Commissioner uses a three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled. *See* 20 C.F.R. § 416.924(a); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001). At Step One, the ALJ must ensure that the child is not engaged in substantial gainful activity. *Id.* At Step Two, the ALJ examines whether "the child has an impairment or combination of impairments that is severe." *Briggs*, 248 F.3d at 1237. If there are no severe impairments, the child is not disabled. 20 C.F.R. § 416.924(c). Finally, at Step Three, the ALJ determined whether the child's impairment(s) "meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404." *Briggs*, 248 F.3d at 1237; 20 C.F.R. § 416.924(d).

"In making the third determination—whether a child's impairment meets or equals a listed impairment—the ALJ must consider whether the impairment, alone or in combination with another impairment, 'medically equals, or functionally equals the listings.'" *Briggs*, 248 F.3d at 1237 (citing 20 C.F.R. § 416.924(a)). If a child's impairments do not "medically" equal the listings, *see* 20 C. F. R. § 416.926, they may still "functionally" equal a listing. *See* 20 C.F.R. § 416.926a. To "functionally equal the listings" a child's "impairment(s) must be of listing-level

---

[1] "Substantial gainful activity means work that— (a) Involves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 416.910; *see also* 20 C.F.R. § 416.972 (defining substantial work activity and gainful work activity).

severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain[.]" 20 C.F.R. § 416.926a. "Domains are broad areas of functioning intended to capture all of what a child can or cannot do." SSR 09-1P, 2009 WL 396031 at *1. The six applicable domains of functioning are:

(i) Acquiring and using information;

(ii) Attending and completing tasks;

(iii) Interacting and relating with others;

(iv) Moving about and manipulating objects;

(v) Caring for yourself; and,

(vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi).

The Administration will determine that a child has a "marked" limitation in a domain when her "impairment(s) interferes seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.925a(e)(2)(i). "'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.' It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* The Administration will find that a child has an "extreme" limitation in a domain when her "impairment(s) interferes very seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

> "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

*Id.*

When the Administration considers whether a child has "marked" or "extreme" limitations in any domain, it examines "all the information [it has] in [the child's] case record about how [the child's] functioning is limited because of [her] impairment(s), and [it] compare[s] [the child's] functioning to the typical functioning of children [her] age who do not have impairments." 20 C.F.R. § 416.926a(f)(1). The Administration also relies on the general description of the domains stated in the regulations to help it decide whether a child has limitations in any given domain and whether these limitations are "marked" or "extreme." 20 C.F.R. § 416.926a(f)(2). These domain descriptions include examples of some activities typical of children in various age groups and some functional limitations the Administration may consider. 20 C.F.R. § 416.926a(f)(3). The domains pertinent to this appeal will be discussed in detail below. However, it is sufficient to state that M.E.M. was an adolescent for all purposes relevant to this appeal. *See, e.g.*, 20 C.F.R. § 416.926a(g)(v) (defining adolescents as individuals ranging from the age of 12 to attainment of age 18).

### III. PROCEDURAL HISTORY

Plaintiff filed an application with the Social Security Administration on August 9, 2013, with a protective filing date of August 5, 2013, seeking supplemental security income benefits on M.E.M.'s behalf. *AR* at 136-145.[2] Plaintiff alleged that M.E.M. became disabled on March 1, 2007, due to a learning disability, mental delay, and Post Traumatic Stress Disorder. *AR* at 55. Plaintiff testified that these impairments cause M.E.M. to struggle and have since she was a toddler, and that she is concerned that M.E.M. is about four years behind and is very shy. *See AR* at 45.

---

[2] Document 17-1 comprises the sealed Certified Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

The Administration denied M.E.M.'s application initially and upon reconsideration, and Plaintiff requested a *de novo* hearing before an administrative law judge. *AR* at 54-98. ALJ O'Melinn held an evidentiary hearing on December 4, 2015. *AR* at 33-53. On March 4, 2016, he issued an unfavorable decision, finding that M.E.M. is not disabled as defined in the Social Security Act. *AR* at 10-32.

Pertinent here, at step one of the sequential evaluation process, the ALJ found that M.E.M. has not engaged in substantial gainful activity since her application date. *AR* at 16. At step two, he determined that M.E.M. has the following severe impairments: "Anxiety, Affective Disorder, Learning Disorder, Obesity, and Speech and Language." *AR* at 16. At the third step, the ALJ concluded that M.E.M. "does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments[.]" *AR* at 16-17. The ALJ also found that M.E.M.'s impairments do not functionally equal the severity of the listings because she "does not have an impairment of combination of impairments that result in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning." *AR* at 18-27. As such, the ALJ determined that M.E.M. is not disabled as a matter of law, and denied her supplemental security income benefits. *AR* at 27.

Plaintiff filed a Request for Review with the Appeals Council, which the Council denied on January 26, 2017. *AR* at 1-8. As such, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. §§ 416.1481, 422.210(a).

## IV. LEGAL STANDARD

This Court reviews the Commissioner's decision to determine whether she applied the correct legal standards and whether her factual findings are supported by substantial evidence. *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). The Court must "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's" when the Commissioner's decision is supported by substantial evidence. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted). "Substantial evidence is more than a scintilla, but less than a preponderance." *Knight*, 756 F.3d at 1175 (quotation omitted). It "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Briggs*, 248 F.3d at 1237 (quotation omitted). The Court must "'meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met.'" *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[.]" *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

## V. ANALYSIS

Plaintiff argues that "[t]he ALJ made several errors in assessing M.E.M.'s functioning under the domains used to assess functioning for children[.]"*Doc. 22* at 1. Specifically, she argues that "M.E.M. has at least marked impairments in three domains: her ability to acquire information; attention and completing tasks; and health and well-being." *Id.* at 6. Additionally, Plaintiff argues that the ALJ failed to consider the "whole child" in denying M.E.M. benefits,

failed to compare M.E.M.'s functioning to non-disabled children, and "did not properly assess parental testimony, all of which were legal errors requiring remand." *Doc. 22* at 1-2. Having meticulously reviewed the record, the Court finds no reversible error.

A) **The ALJ's findings as to the effects of M.E.M.'s impairments on the domains of function are supported by substantial evidence.**

1. **Acquiring and Using Information**

The functional domain of acquiring and using information considers how well a child acquires or learns information and how well she uses the information she has learned. 20 C.F.R. § 416.926a(g). The regulations provide the following age group descriptors for adolescents:

> In middle and high school, you should continue to demonstrate what you have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). You should also be able to use what you have learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). You should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). You should also learn to apply these skills in practical ways that will help you enter the workplace after you finish school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer).

20 C.F.R. § 416.926a(g)(2)(v). Additionally, the regulations provide the following examples of limited functioning in acquiring and using information:

> (i) You do not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night.
> (ii) You cannot rhyme words or the sounds in words.
> (iii) You have difficulty recalling important things you learned in school yesterday.
> (iv) You have difficulty solving mathematics questions or computing arithmetic answers.
> (v) You talk only in short, simple sentences and have difficulty explaining what you mean.

20 C.F.R. § 416.926a(g)(3)(i)-(v).

Plaintiff argues that M.E.M.'s impairment in this domain is at least marked, but likely is extreme based on both standardized testing and teacher evaluations. *Doc. 22* at 7. The ALJ, on the other hand, found that M.E.M. has "less than marked limitation in this area in light of the weight [he] accorded to the opinions of Drs. Gucker, Aase, Brady, and Blacharsh, as corroborated by the observations of her teachers and school records." *AR* at 23. Plaintiff argues that this analysis is error "for at least two reasons." *Doc. 22* at 14. First, she argues that Drs. Gucker, Aase, Brady, and Blacharsh are all non-examining doctors, and, as such, their opinions are entitled to the least amount of weight of any opinion. *Id.* Second, Plaintiff argues that the ALJ erred "because he failed to discuss the teacher reports that show marked limitations in this domain, or the findings from Drs. Lang and Krueger." *Id.* at 15. The Court rejects both arguments.

As to Plaintiff's first argument, the regulations support the ALJ's decision to rely on the non-examining doctors' opinions so long as they were weighed appropriately. "Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 416.913a(b)(1). As such, as with any other medical opinion, ALJs must weigh evidence from these sources under 20 C.F.R. § 416.927(c). *Id.* Under that provision, the Administration considers the following factors in deciding the weight to give to any medical opinion: (1) the examining relationship; (2) the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the medical source; and (6) "other factors … which tend to support or contradict the medical opinion." 20 C.F.R. § 416.927(c)(1)-(6).

> For example, the amount of understanding of our disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding, and the extent to which a medical source is familiar with the

other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 416.927(c)(6).

Here, the ALJ gave Drs. Gucker and Aase's opinion, rendered at the initial stage of administrative review, *AR* at 61, "significant weight," because they "reviewed the evidence and are familiar with Social Security disability standards." *AR* at 21. Accordingly, he adopted their findings that M.E.M. is less than markedly limited in the domain of acquiring and using information (and all of the other domains of function). *AR* at 21. Likewise, the ALJ gave Drs. Brady and Blacharsh's opinion (rendered at reconsideration), *AR* at 73, "some weight" because, based on his review of the evidence as a whole, they understated M.E.M.'s limitations in some domains. *AR* at 21. However, he adopted their finding that she is less than markedly impaired in acquiring and using information. *Id.*

The ALJ was entitled to consider and rely on these opinions. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (rejecting the argument that the ALJ "placed undue weight on the opinion of a State agency physician who did not examine her" because "[t]he non-examining physician's opinion is an acceptable medical source, which the ALJ was entitled to consider."). Plaintiff argues, however, that there are opinions and school records dated after these opinions were issued, rendering them stale. *Doc. 22* at 14. However, as the Commissioner correctly notes, nothing in the school records that post-date these opinions undermines the non-examining doctor's findings. *See Doc. 27* at 10 (citing *Tarpley v. Colvin*, 601 F. App'x 641, 644 (10th Cir. 2015)). Indeed, in *Tarpley*, the Tenth Circuit made clear that there is nothing improper about relying on a non-examining doctor's opinion so long as nothing in the later medical records shows a material change in the claimant's condition that would render the non-examining opinion stale. *Tarpley*, 601 F. App'x at 644.

Moreover, Plaintiff's argument ignores that the ALJ relied not only on the non-examining doctors' findings in determining that M.E.M. is less than markedly limited in this domain, but also on "the observations of her teachers and school records." *AR* at 23. Indeed, as the ALJ described, Cynthia Campbell, M.E.M.'s special education teacher, opined that M.E.M. is only limited in her ability to acquire and use information in the area of mathematics on January 29, 2014. *AR* at 19 ("The teacher emphasized that math is the only area of exceptionality for the Claimant."); *see AR* at 191-200. This point of view was echoed by Louisa Quintana, M.E.M.'s math teacher, in December, 2015. *See AR* at 19, 271-277. Ms. Quintana opined that M.E.M. "can be a strong student in the math content subject she's taking" but related that her tardiness and preoccupation with another student resulted in "no focus in class!" *AR* at 271. Ms. Quintana further opined that "[t]he only thing that is contributing to [M.E.M.]'s low grade this quarter is her inattentiveness to the class. This I don't see as a physical attribute, but a choice she is making, to keep the attention of a fellow student." *AR* at 277. Ms. Quintana made clear that this is not an issue of classroom management (there are only 4 students in M.E.M.'s class), "[i]t's just that she seeks out the attention of this 1 person." *AR* at 277.

As the ALJ also noted, M.E.M.'s Individual Education Plans (IEPs) also showed an upward trend in her performance. *AR* at 20. Her most recent IEP, dated April 13, 2015, showed M.E.M. spending four hours per week in the special education setting out of a possible 29 hours. *See AR* at 244-264. While she had some accommodations, as the ALJ notes, she was passing all of her classes at the time of the administrative hearing and had done relatively well during the ninth grade. *AR* at 20, 240, 268.

As noted, Plaintiff also argues that the ALJ erred by failing to address the findings from Drs. Lang and Krueger, which purportedly show marked limitations in this domain. *Doc. 22* at

15. However, a similar argument was recently addressed and rejected by the Tenth Circuit in *Taylor v. Berryhill*, 679 F. App'x 661 (10th Cir. 2017). There, the plaintiff complained that the ALJ failed to discuss anything other than the child's special education teacher's report in finding that she had less than a marked impairment in the domain of attending and completing tasks. *Id.* at 664. The Tenth Circuit found this to be a "faulty description" of the ALJ's decision, which, like the ALJ's decision here, contained a discussion of all of the medical evidence at the outset of the opinion. *Id.* ("[A]t the outset of her global discussion of all six domains, the ALJ discussed in detail all of the substantial evidence supporting her functionality and domain findings."). Here, the ALJ did not ignore the findings of Drs. Lang and Krueger; to the contrary, he discussed both of their opinions and weighed them in accordance with the regulations.

An ALJ must discuss and weigh the opinions of consultative examiners who have examined the claimant. *See Ringgold v. Colvin*, 644 F. App'x 841, 843 (10th Cir. 2016) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) and 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1)). Such opinions "may be dismissed or discounted, of course, but that must be based on an evaluation of all of the factors set out in the regulations and the ALJ must provide specific, legitimate reasons for rejecting it." *Id.* As with nonexamining sources, the relevant factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)); *see also* 20 C.F.R. § 416.927(c). "[N]ot every factor for

weighing opinion evidence will apply in every case." *Oldham v. Astrue*, 509 F.3d 1254, 1258

(10th Cir. 2007) (quoting SSR 06-03p, 2006 WL 2329939, at *5). Thus, an "ALJ need not

explicitly discuss all the factors if his decision is 'sufficiently specific to make clear to any

subsequent reviewers the weight he gave to the medical opinion and the reasons for that

weight.'" *Rivera v. Colvin*, 629 F. App'x 842, 844 (10th Cir. 2015) (unpublished) (quoting

*Oldham*, 509 F.3d at 1258).

> The ALJ addressed Dr. Krueger's opinion as follows:

> Dr. Krueger performed a consultative examination on the Claimant on October 19, 2013. Exh. 6F. The doctor stated the Claimant had a marked impairment with her arithmetic and reading. He concluded she had serious learning problems and significant problems with depression. The doctor's opinion also contains an opinion regarding the Claimant's ability to work. Because my decision does not address the Claimant's ability to work, I give his opinions regarding the Claimant's ability to work no weight. The doctor's opinion is a snapshot of the Claimant's condition at one time and he did not review other evidence. In light of these limitations, I find that his opinion that the Claimant suffers from a marked impairment in arithmetic and reading overstates the Claimant's limitations and accord his opinion some weight.

*AR* at 20. In sum, the ALJ accorded Dr. Krueger's opinion only "some" weight in this functional

domain because it was a one-time consultation and Dr. Krueger did not review M.E.M.'s medical

records.

Plaintiff argues that this first reason is contrary to law. *See Doc. 28* at 3 (citing *Chapo v.

Astrue*, 682 F. 3d 1285, 1291 (10th Cir. 2012)). It is true that the Tenth Circuit in *Chapo*

cautioned against rejecting an examining source's opinion on the basis that he has only examined

the claimant on one occasion. *Chapo*, 682 F.3d at 1291 ("The Commissioner has not cited a

single authority for the facially dubious proposition that the opinion of an examining medical

source is, as such, dismissible."). However, *Chapo* is distinguishable because the ALJ did not

outright reject Dr. Krueger's opinions, and he provided an additional reason for according less

weight to Dr. Krueger's opinions: that he had not reviewed the record. Moreover, SSR 09-2P, which Plaintiff relies on, states that the Administration needs "evidence that is sufficient to evaluate a child's limitations on a *longitudinal* basis." SSR 09-2P, 2009 WL 396032 at *2 (emphasis added). In other words, it was not inappropriate for the ALJ to consider that Dr. Krueger's opinion was a "snapshot" of M.E.M.'s functioning. *Id.*

Of course, Plaintiff asserts that the ALJ's additional reason for according less weight to Dr. Krueger's opinion – that he did not review other evidence – is contrary to law and unfair as a matter of principle. *See Doc. 28* at 3 (citing 20 C.F.R. § 404.1517). Section 404.1517 states that the Commissioner "will also give the examiner any necessary background information about your condition." *Id.*; *see also* 20 C.F.R. § 416.917. It does not state that the Commissioner will provide the examiner the entire case record. Moreover, this argument ignores the fact that it is Plaintiff's burden to prove that M.E.M. is disabled, not the Commissioner's. 20 C.F.R. §§ 416.912(a)(1) ("In general, you have to prove to us that you are blind or disabled."), 416.916. Finally, Plaintiff provides this Court with no reason to fault the ALJ for relying on a reason that the Tenth Circuit has recently affirmed. *See Thomas v. Berryhill*, 685 F. App'x 659, 663 (10th Cir. 2017) (affirming an ALJ's decision to discount consultative examiner findings because they did not review the entire medical record and their opinions were inconsistent with other medical opinions and the record as a whole).

Likewise, Plaintiff has not demonstrated error from the ALJ's treatment of Dr. Lang's opinion, rendered when M.E.M. was seven. The ALJ discussed Dr. Lang's opinion as follows:

> John Lang, Ph.D. performed a consultative examination on the Claimant on June 25, 2007. Exh. lF. On the Wechsler Intelligence Scale for Children, Dr. Lang scored the Claimant a Full Scale IQ of 75. Dr. Lang found the Claimant had the emotional and mental functioning of a younger child and found she suffered from borderline cognitive functioning. He concluded the Claimant distracts, has poor attention, and needs to be redirected to the task at hand. Dr. Lang is familiar with

Social Security disability standards. His opinion is consistent with the record as a whole. For these reasons, I accord his opinion significant weight.

*AR* at 20. Plaintiff does not explain how the ALJ erred in ascribing Dr. Lang's opinion "significant weight." *Doc. 22* at 15. And nothing in Dr. Lang's opinion undermines that ALJ's conclusions in this domain. *AR* at 283-85; *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). As such, the Court finds no reversible error merely because the ALJ failed to specifically address Dr. Lang's report when discussing the domain of acquiring and using information.

### 2. Attending and Completing Tasks

The functional domain of "attending and completing tasks" considers how well a child is able to focus and maintain attention, and how well she begins, carries through, and finishes activities, including the pace at which she perform activities and the ease with which she changes them. 20 C.F.R. § 416.926a(h).

> Attention involves regulating your levels of alertness and initiating and maintaining concentration. It involves the ability to filter out distractions and to remain focused on an activity or task at a consistent level of performance. This means focusing long enough to initiate and complete an activity or task, and changing focus once it is completed. It also means that if you lose or change your focus in the middle of a task, you are able to return to the task without other people having to remind you frequently to finish it.

20 C.F.R. § 416.926a(h)(1)(i). The regulations provide the following age descriptor for this domain:

> In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects. You should also be able to organize your materials and to plan your time in order to complete school tasks and assignments. In anticipation of entering the workplace, you should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting.

20 C.F.R. § 416.926a(h)(2)(v). Examples of limited functioning in attending and completing tasks include:

> (i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
> (ii) You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.
> (iii) You repeatedly become sidetracked from your activities or you frequently interrupt others.
> (iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.
> (v) You require extra supervision to keep you engaged in an activity.

20 C.F.R. § 416.926a(h)(3)(i)-(v).

Plaintiff argues that M.E.M.'s impairment in this domain is at least marked. *Doc. 22* at 17. The ALJ, on the other hand, found that M.E.M. has less than a marked limitation in attending and completing tasks, citing the opinions or Drs. Gucker, Aase, and Lang, as well as the observations of her teachers and school records. *AR* at 23. Plaintiff argues that this finding is contrary to law and substantial evidence for the reasons stated above; however, for those same reasons, the Court disagrees.

First, as stated above, there was nothing improper in the ALJ's reliance on non-examining doctors Gucker and Aase's findings, so long as his analysis is supported by substantial evidence, which the Court has already concluded it was. Second, Plaintiff has failed to demonstrate that M.E.M.'s impairments "seriously" interfere with her abilities in this domain. *See Doc. 22* at 18. Plaintiff merely rehashes the evidence and asks the Court to reweigh it, but this the Court cannot do. *See White v. Berryhill*, 704 F. App'x 774, 779 (10th Cir. 2017). Third, as noted above, M.E.M.'s teachers were of the opinion that she has little trouble attending and completing tasks in most subjects, math being the outlier. But M.E.M.'s inability to attend and concentrate in math is not due to her medically determinable impairments, as discussed above.

Finally, Plaintiff argues that the ALJ erred in effectively rejecting[3] the opinion of consultative examiner Dr. Gabaldon, who found M.E.M. to have a marked impairment in this domain in 2007. *Doc. 22* at 19; *see AR* at 536. Putting aside the age of this opinion, as with Drs. Lang and Krueger, the ALJ examined Dr. Gabaldon's report under the regulations and compared it to other evidence of record:

> J Leroy Gabaldon, Ph.D., opined on July 5, 2007, that the Claimant suffered from marked limitation in acquiring and using information and attending and completing tasks. Exh. 14F. Dr. Gabaldon does not give a detailed explanation for his conclusions and his opinion varies greatly from the record as a whole. Therefore, I accord his opinion little weight.

*AR* at 20. These reasons touch upon the supportability of the opinion as well as its consistency with the record. *See* 20 C.F.R. §§ 416.927(c)(3), 416.927(c)(4). As such, the Court will not reverse the ALJ for his treatment of Dr. Gabaldon's opinion.

### 3. Health and Physical Well-Being

In the domain of health and physical well-being, the Administration considers the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on a child's functioning. 20 C.F.R. § 416.926a(l). Thus, the "domain addresses how such things as recurrent illness, the side effects of medication, and the need for ongoing treatment affect a child's body; that is, the child's health and sense of physical well-being." SSR 09-8P, 2009 WL 396030 at *2. "In all cases, it is important to remember that the cumulative physical effects of a child's physical or mental impairment(s) can vary in kind and intensity, and can affect each child differently." SSR 09-8P, 2009 WL 396030 at *3. Examples of limitations in health and physical well-being include:

---

[3] *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (equating "according little weight to" an opinion with "effectively rejecting" it); *Crowder v. Colvin*, 561 F. App'x 740, 742 (10th Cir. 2014) (citing *Chapo* for this proposition); *Ringgold v. Colvin*, 644 F. App'x 841, 844 (10th Cir. 2016) (same).

(i) You have generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of your impairment(s).

(ii) You have somatic complaints related to your impairments (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia).

(iii) You have limitations in your physical functioning because of your treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments).

(iv) You have exacerbations from one impairment or a combination of impairments that interfere with your physical functioning.

(v) You are medically fragile and need intensive medical care to maintain your level of health and physical well-being.

20 C.F.R. § 416.926a(l)(4)(i)-(v).

[W]e may also consider you to have a "marked" limitation [in this domain] if you are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs. For purposes of this domain, "frequent means that you have episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more. We may also find that you have a "marked" limitation if you have episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

20 C.F.R. § 416.926a(e)(2)(iv).

The ALJ found M.E.M. to have no impairment in this domain, relying on the opinions of Drs. Gucker, Aase, Blacharsh, and Brady, and "the record as a whole." *AR* at 27. Plaintiff argues that "[t]his finding is clear legal error, because M.E.M. has been diagnosed with, and found to have severe medically determinable impairments of Anxiety Disorder, Learning Disorder, obesity, and speech and language problems." *Doc. 22* at 19-20. Putting aside that it was the ALJ who identified these medically determinable impairments, *AR* at 16, Plaintiff's argument is unconvincing for several reasons.

First, the mere existence of a medically determinable impairment, or even a combination of impairments, is not enough to alone render a claimant disabled. *C.f. Brown v. Chater*, 64 F.3d 669 (Table), 1995 WL 490275 at *2 (10th Cir. 1995) (explaining that the presence of a condition or ailment alone, without functional effects, is insufficient to establish a disability.); *Birkle v. Colvin*, 82 F. Supp. 3d 1308, 1311 (D. Colo. 2015) ("[T]he mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act."). Second, Plaintiff's recitation of M.E.M.'s diagnoses and various providers who have treated her merely invites the Court to re-weigh the evidence, which, as explained above, the Court cannot do. This is especially true in the case of Drs. Krueger and Davies, whose opinions the ALJ expressly weighed and addressed in his decision. *AR* at 20, 21. Finally, the ALJ permissibly relied upon the opinions of Drs. Gucker, Aase, Blacharsh, and Brady, all of whom found no limitation in this domain, *AR* at 61, 73, and "the record as a whole," which does not support Plaintiff's position. As such, the Court will not reverse the ALJ for his discussion of this domain.

**B) The ALJ appropriately employed the "whole child" approach in finding M.E.M. not disabled.**

Plaintiff argues that the ALJ did not engage in the "whole child" analysis in finding that M.E.M. is not disabled. *See Doc. 22* at 21. Specifically, Plaintiff argues that the ALJ failed to consider the interplay between the various impairments, and their effect on M.E.M.'s overall functioning. *Id.* The Commissioner responds that the ALJ indeed engaged the "whole child" technique, and "provided 'sufficient detail' for the Court to understand how he made his findings[.]" *Doc. 27* at 16. For the reasons that follow, the Court agrees with the Commissioner.

The "whole child" approach is a "technique for determining functional equivalence," which "accounts for all of the effects of a child's impairments singly and in combination." SSR

09-1P, 2009 WL 396031 at *2. The Administration will "always evaluate the 'whole child' when [it] make[s] a finding regarding functional equivalence[.]" SSR 09-1P, 2009 WL 396031 at *2. "The 'whole child' approach recognizes that many activities require the use of more than one of the abilities described in the first five domains, and that they may also be affected by a problem that we consider in the sixth domain." SSR 09-1P, 2009 WL 396031 at *3.

> The functional equivalence rules require us to begin by considering how the child functions every day and in all settings compared to other children the same age who do not have impairments. After we determine how the child functions in all settings, we use the domains to create a picture of how, and the extent to which, the child is limited by identifying the abilities that are used to do each activity, and assigning each activity to any and all of the domains involved in doing it. We then determine whether the child's medically determinable impairment(s) accounts for the limitations we have identified. Finally, we rate the overall severity of limitation in each domain to determine whether the child is "disabled" as defined in the Act.

SSR 09-1P, 2009 WL 396031 at *2. Specifically, the Administration considers the following questions:

1. How does the child function? In answering this question, the Administration considers:
   a. What activities the child is able to perform,
   b. What activities the child is not able to perform,
   c. Which of the child's activities are limited or restricted,
   d. Where the child has difficulty with activities – at home, in childcare, at school, or in the community,
   e. Whether the child has difficulty independently initiating, sustaining, or completing activities,
   f. The kind of help, and how much help the child needs to do activities, and how often the child needs it, and
   g. Whether the child needs a structured or supportive setting, what type of structure or support the child needs, and how often the child needs it.
2. Which domains are involved in performing the activities?
3. Could the child's medically determinable impairment(s) account for limitations in the child's activities?
4. To what degree does the impairment(s) limit the child's ability to function age-appropriately in each domain?

SSR 09-1P, 2009 WL 396031 at *2-3. An ALJ need not cite all of the considerations in SSR 09-1P; his reasoning is sufficient if it permits a subsequent reviewer to understand how he reached his findings. SSR 09-1P, 2009 WL 396031 at *3.

The Court agrees with the Commissioner that the ALJ's analysis was sufficient to withstand scrutiny in this case. First, the ALJ set forth the general concept behind the "whole child" approach as follows:

> As provided in 20 CFR 416.926a(b) and (c) and explained in SSR 09-lp, I have evaluated the "whole child" in making findings regarding functional equivalence. I have first evaluated how the child functions in all settings and at all times, as compared to other children the same age who do not have impairments. I have also assessed the interactive and cumulative effects of all of the Claimant's medically determinable impairment(s), including any impairments that are not "severe" in all of the affected domains. In evaluating the Claimant's limitations, I have considered the type, extent, and frequency of help the Claimant needs to function.

*AR* at 18. The ALJ then discussed M.E.M.'s limitations and abilities as stated in Plaintiff's function report, Plaintiff's testimony, M.E.M.'s testimony, Teacher's Questionnaires submitted by M.E.M.'s special education and math teachers, M.E.M.'s Individual Education Plans (IEPs), her grades, her medical records, and a third-party function report submitted by M.E.M.'s father. *AR* at 18-22. The ALJ then discussed the various domains of function and assessed the degree to which M.E.M.'s impairments limit her ability to function age-appropriately in each domain by reference to various medical opinions, the observations of her teachers, and her school records. *See AR* at 22-27. Ultimately, the ALJ reached the conclusion that M.E.M. "does not have an impairment or combination of impairments that result in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning[,]" *AR* at 27, and that she is not disabled under the regulations. The Court can follow the ALJ's reasoning and finds that he employed the "whole child" approach, and, as such, will not reverse him on this ground.

### C) The ALJ appropriately compared M.E.M's functioning to non-disabled children.

Relying primarily on 20 C.F.R. § 416.913(c)(3),[4] Plaintiff argues that "[t]he ALJ was required to consider M.E.M.'s functioning in contrast to children without disabilities." *Doc. 22* at 22. However, he "did not show that he compared M.E.M.'s behavior to children without impairments. Adolescents without impairments are not in special education, nor are they in psychological counseling. . . . The ALJ's failure to discuss these accommodations was error requiring remand." *Id.* (citing 20 C.F.R. § 416.913(c)(3); SSR 09-2P).[5] The Commissioner agrees that the ALJ was required to compare M.E.M. to non-disabled children; in fact, she argues that the ALJ's decision "implicitly" made this comparison. *Doc. 27* at 16. The Commissioner goes on to argue that "Plaintiff has not demonstrated that any additional analysis was required." *Id.* at 17. For the reasons that follow, the Court is not convinced that the ALJ had any such duty under the regulation Plaintiff cites. However, assuming *arguendo* that he did, the Court finds that no further analysis was required in this case.

The version of 20 C.F.R. § 416.913 that was in effect at the time this case was before the ALJ included the following subsection:

> (c) Statements about what you can still do. At the administrative law judge and Appeals Council levels, we will consider residual functional capacity assessments made by State agency medical and psychological consultants and other program physicians and psychologists to be "statements about what you can still do" made by nonexamining physicians and psychologists based on their review of the evidence in the case record. Statements about what you can still do (based on the acceptable medical source's findings on the factors under paragraphs (b)(1) through (b)(5) of this section) should describe, but are not limited to, the kinds of physical and mental capabilities listed as follows (See §§ 416.927 and 416.945(c)):

---

[4] 20 C.F.R. § 416.913 was amended effective March 27, 2017. It no longer contains subsection (c), and there is no pertinent provision replacing it. For the ease of reference, the Court will only cite to this version of the regulation.

[5] Plaintiff also cites 20 C.F.R. § 416.927(d) and *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008), in support of her position. However, Section 416.927(d) is inapplicable, as it deals with medical source opinions on issues reserved to the Commissioner. Likewise, *Carpenter* is inapposite, as it was not a child case and does not discuss the issue at bar.

> …
> (3) If you are a child, the medical source's opinion about your functional limitations compared to children your age who do not have impairments in acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being.

20 C.F.R. § 416.913(c)(3). Plaintiff apparently reads this subsection to place upon the ALJ an affirmative duty to compare M.E.M.'s functioning with children her own age in the body of his decision. *Doc. 22* at 21-23. However, the Court does not read this provision to require the ALJ to do anything; rather, it appears to encourage *the medical source* reviewing a child's ability to function to state what the child can still do compared to children of the same age, employing the same functional domains that the ALJ later analyzes in coming to a decision on disability. As such, Plaintiff's initial premise, that the ALJ had some obligation to directly compare M.E.M. with other children her age under Section 416.913(c)(3), is rejected.

This is not to say that the ALJ has no obligation to compare a child to non-disabled children. To the contrary, the ALJ must ensure that the record is complete, and a complete record will permit the Administration to determine how the child typically functions compared to children of the same age who do not have impairments. 20 C.F.R. § 416.913(e)(3). Moreover, when considering a child's functioning, the Administration directs ALJs to "look at how appropriately, effectively, and independently [the child] perform[s] [her] activities compared to the performance of other children [of the same] age who do not have impairments." 20 C.F.R. § 416.926a(b). "A child functions age-appropriately when initiating, sustaining, and completing age-appropriate activities. 'Functioning' includes everything a child does throughout a day at home, at school, and in the community." SSR 09-2P, 2009 WL 396032 at *2.

To make this determination, the Administration "need[s] evidence that is sufficient to evaluate a child's limitations on a longitudinal basis; that is, over time" in order to assess "whether the child's impairment(s) affects day-to-day functioning and whether the child's activities are typical of other children of the same age who do not have impairments." SSR 09-2P, 2009 WL 396032 at *2. Such evidence includes: what activities the child is able to perform; what activities the child is not able to perform; which of the child's activities are limited or restricted compared to other children of the same age who do not have impairments; where the child has difficulties with activities; whether the child has difficulties with independently initiating, sustaining, or completing activities; what kind of and how much help the child needs to do activities and how often the child needs it; and, whether the child needs a structured or supportive setting. SSR 09-2P, 2009 WL 396032 at *2. Contrary to Plaintiff's position in her Reply brief,[6] the Administration does not require ALJs to provide formal answers to these specific questions in the text of the decision, but

> the evidence should create a clear picture of the child's functioning in the context of the six functional equivalence domains so that [the Administration] can determine the severity of limitation in each domain. The critical element in evaluating the severity of a child's limitations is how appropriately, effectively, and independently the child performs age-appropriate activities.

SSR 09-2P, 2009 WL 396032 at *3. As such, the Administration directs ALJs to review "all of the evidence in the case record to determine whether a child is disabled," including reports from medical sources, other, non-medical, sources "who know and have contact with the child," as well as any evaluations and records maintained by the child's early intervention and school programs (such as Individualized Education Plans (IEPs)), to ensure an adequate picture of the child's functioning as compared to her peers is attained. SSR 09-2P, 2009 WL 396032 at *4. The

---

[6] Plaintiff argues that SSR 09-2P "required" the ALJ to answer these questions. However, the SSR explicitly rejects that notion. *See* SSR 09-2P, 2009 WL 396032 at *3 ("We do not require our adjudicators to provide formal answers to these specific questions in the determination or decision.").

Administration then provides "examples of activities that illustrate the typical functioning of children in different age groups" for most of the domains, and examples of limitations within all domains. 20 C.F.R. § 416.926a(b)(1); *see also* 20 C.F.R. § 416.926a(f). It is then the ALJ's task to consider the child's limitations in comparison to children her own age without limitations, and decide whether the child's impairments functionally equal a listing. *See* 20 C.F.R. § 416.926a(d)-(l).

This is exactly what the ALJ did in this case. The ALJ reviewed Plaintiff's testimony, M.E.M.'s testimony, her teacher's questionnaires, her IEPs, her school grades, and her medical records. *AR* at 18-22. Among other facts, the ALJ noted that M.E.M.'s teachers reported that she "is a lovely young girl who is a typical middle schooler and a great role model for her friends," that she is currently only spending four hours per week (out of a possible 29) in a special education setting, that, at least during the 2013-2014 academic school year, M.E.M. ranked 15 out of 35 students, and that one doctor assessed M.E.M. as three to four years behind her peers. *See AR* at 19-21. The ALJ concurrently weighed and assessed this evidence, explaining why he found some of it convincing and rejected that which was inconsistent with his ultimate determination that M.E.M. is not disabled as a matter of law. The ALJ then discussed the six functional domains, including in his discussion traits that an adolescent without limitations should demonstrate. *AR* at 22-27. Nothing further was required by the applicable regulations.

**D) The ALJ's credibility findings are supported by substantial evidence.**

Finally, Plaintiff argues that the ALJ "improperly" assessed her credibility and that of M.E.M.'s father in denying benefits. *Doc. 22* at 23-24. The Commissioner counters that the ALJ provided valid reasons for finding that M.E.M. is not as limited as her parents opined. *Doc. 27* at 17. In her Reply, Plaintiff argues that her testimony was consistent with the evidence, rendering

the ALJ's decision to discount her testimony unsupported by substantial evidence. *Doc. 28* at 7. For the reasons that follow, the Court will not disrupt the ALJ's credibility findings.

If the child claimant is unable to adequately describe her symptoms, the ALJ must accept the testimony of the person most familiar with the child's condition. *Briggs*, 248 F.3d at 1239 (citing 20 C.F.R. § 416.928(a));[7] *see also Knight*, 756 F.3d at 1176. "In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying." *Briggs*, 248 F.3d at 1239 (citation omitted). However, this Court begins with the propositions that "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability[,]" SSR 16-3P, 2017 WL 5180304, *2, and "[c]redibility[8] determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Briggs*, 248 F.3d at 1239 (quotation omitted); *accord Taylor v. Berryhill*, 679 F. App'x 661, 663 (10th Cir. 2017) ("The ALJ is best suited to assess credibility, and we will not disturb credibility findings that are supported by substantial evidence."). "In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you." 20 C.F.R. § 416.929(c)(1). The Administration considers whether the objective medical evidence supports a claimant's claimed limitations, 20 C.F.R. § 416.929(c)(2), as well as certain factors under the regulations relevant to the determination of whether a claimant's symptoms are in fact disabling.

---

[7] This section has since been rescinded. However, it provided: "If you are a child under age 18 and are unable to adequately describe your symptom(s), we will accept as a statement of this symptom(s) the description given by the person who is most familiar with you, such as a parent, other relative, or guardian. Your statements (or those of another person) alone, however, are not enough to establish that there is a physical or mental impairment." 20 C.F.R. § 416.928(a).

[8] The Administration has subsequently eliminated the use of the term "credibility" from its sub-regulatory policy for the purpose of clarifying "that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, *2.

*See* 20 C.F.R. § 416.929(c)(3); *see also* SSR 16-3P, 2017 WL 5180304 at *7-8; *Watts v. Berryhill*, 2017 WL 4862424, at *3 (10th Cir. 2017). Findings as to a claimant's subjective symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. . . . But we do not require a formalistic factor-by-factor recitation of the evidence." *Watts*, 2017 WL 4862424, at *3 (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000)). To the contrary, an ALJ need only discuss those factors that are "relevant to the case." SSR 16-3P, 2017 WL 5180304, *8. And, in the end, it is the ALJ's task to "determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work (or if you are a child, your functioning)." 20 C.F.R. § 416.929(a); *see also* 20 C.F.R. § 416.929(c)(4) ("Your symptoms, including pain, will be determined to diminish your capacity for basic work activities (or, if you are a child, your functioning) to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.").

The ALJ questioned both Plaintiff and M.E.M. at the hearing, and Plaintiff submitted a function report on M.E.M.'s behalf. *AR* at 39-53. In his decision, the ALJ summarized Plaintiff's statements on M.E.M.'s function report as follows:

> On the Claimant's function report, the Claimant's mother reported her daughter's daily activities and physical abilities were not limited. Exh. 2E. She also reported limitations in her daughter's ability to communicate, to understand and use what she had learned, in her ability to take care of her personal needs and safety, that her daughter's impairments affected her social activities or behavior with other people, and her ability to pay attention and stick with a task was limited.

*AR* at 18. The ALJ also summarized Plaintiff's testimony:

> The Claimant's mother testified she believes her daughter has learning disabilities. She related her daughter struggles with homework and gets easily frustrated. Around the house, the Claimant does her chores, but needs reminders more than her other siblings. According to the Claimant's mother, she spends much of her time in her room or on her cell phone and it is hard to get her to socialize. The Claimant recently told her mother she would like to drop out of school.

*AR* at 19.

Then, after reviewing the evidence, the ALJ made the following credibility findings: "I give the Claimant's mother's statements regarding her daughter's limitations little weight because the credible medical evidence and the record as a whole does not support the extent of the claimed limitations." *AR* at 22. The ALJ also gave little weight to a function report submitted by M.E.M.'s father on the grounds that "it is a lay opinion based upon casual observation rather than objective medical examination and testing. It certainly does not outweigh the accumulated medical evidence regarding the extent to which the Claimant's impairments limit her functional abilities. Furthermore, the Claimant's father's statement may be influenced by family loyalty and he may have a financial interest in his daughter being awarded benefits." *AR* at 22.

Plaintiff essentially argues that the ALJ failed to describe evidence that is contrary to her testimony. *Doc. 22* at 23. But the ALJ did just this throughout the body of his opinion, by describing M.E.M.'s testimony as well as the medical evidence, weighing it, and comparing it to Plaintiff and M.E.M.'s father's statements. *AR* at 18-22. In so doing, the ALJ appropriately compared Plaintiff's allegations with objective medical evidence of record, including M.E.M.'s own testimony. *Compare AR* at 19 *with AR* at 149-157, 201-209. While it is true that the ALJ could have discussed more of the regulatory factors, this was not required, and the Court finds no fault with the ALJ's analysis.

## VI. CONCLUSION

In sum, Plaintiff has failed to demonstrate that the ALJ committed harmful, reversible, error in this case.

Wherefore,

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion to Reverse and Remand for Payment of Benefits or in the Alternative, for Rehearing with Supporting Memorandum (*Doc. 22*) be **denied**.


_____
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).

**A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**