IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

IRENE PANAS, on behalf of M.E.M.,
a minor,

       Plaintiff,

v.                                            CIV 17-0364 WJ/JHR

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Magistrate Judge Jerry H. Ritter's Proposed Findings and Recommended Disposition ("PFRD"), filed February 7, 2018 (*Doc. 30*), Plaintiff's Objections to Magistrate Judge's February 7, 2018 Proposed Findings and Recommended Disposition (*Doc. 31*), filed February 20, 2018, and Defendant's Response to Plaintiff's Objections, filed March 6, 2018 (*Doc. 32*). The Court will adopt the PFRD in full. Plaintiff's objections fail to demonstrate that the Administrative Law Judge ("ALJ") assigned to her case committed reversible error in denying M.E.M.'s application for Supplemental Security Income benefits, and Plaintiff has failed to convince the Court that the Magistrate Judge erred in affirming his decision.

### I)      STANDARD OF REVIEW

When resolving objections to a magistrate judge's proposal, "the district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further

evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C).

The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation," when conducting a *de novo* review of a party's timely, specific objections to the magistrate judge's report. *In re Griego*, 64 F.3d 580, 583-84 (10th Cir. 1995). A district court need not, however, "make any specific findings; the district court must merely conduct a *de novo* review of the record." *Garcia v. City of Albuquerque*, 232 F.3d 760, 766 (10th Cir. 2000).

**II)   BACKGROUND[1]**

Plaintiff applied for benefits on behalf of her daughter, M.E.M., on the grounds that she is disabled due to a learning disability, mental delay, and post-traumatic stress disorder ("PTSD"). *Administrative Record* ("*AR*") at 55. The ALJ who denied her claim agreed that, based on his review of the record, M.E.M. has the severe impairments of Anxiety, Affective Disorder, Learning Disorder, Obesity, and Speech and Language. *AR* at 16. However, the ALJ found that M.E.M.'s impairments neither meet nor medically equal the severity of the listed impairments. *AR* at 16-17. He likewise found that M.E.M.'s impairments do not functionally equal the severity of the listings. *AR* at 18-27. As such, he denied benefits.

Plaintiff appealed to this Court, and the undersigned referred the case to the Magistrate Judge to issue Proposed Findings and a Recommended Disposition as to the ultimate disposition of the case. *Doc. 24*. Plaintiff's arguments before the Magistrate Judge are largely repeated in her objections, addressed below. Suffice to say, in his 28-page PFRD, the Magistrate Judge rejected

---

[1] In the PFRD, the Magistrate Judge presents a more detailed description of facts and procedural posture. Only those portions relevant to Plaintiff's objections are described here.

Plaintiff's claims of error, reasoning that the ALJ's findings were tethered to substantial evidence and that the correct legal standards were applied to M.E.M.'s case. *See Doc. 30.*

### III)     ANALYSIS

Plaintiff's objections are focused on the third step of the evaluation an ALJ must engage in in children's cases – wherein he must determine whether the child's impairments "functionally" equal a "listing."[2] At this step in the analysis, an ALJ is required to assess six "domains of function." *See* 20 C.F.R. § 416.925a(e)(2)(i). If a child's limitations result in "marked" limitations in two domains, or an "extreme" limitation in one domain, the child will have demonstrated listing-level severity, and benefits will issue. 20 C.F.R. § 416.925(b)(2)(ii). In this case, the ALJ found less than marked impairment in all six domains, and he denied benefits accordingly. *See AR* at 26-31. Plaintiff's appeal asserts that the ALJ erred in his assessment of three domains: acquiring and using information; attending and completing tasks; and health and physical well-being. *See Doc. 22* at 7-20. Plaintiff further claims that the ALJ committed errors applicable to his findings in all domains: by failing to consider the "whole child;" by failing to compare M.E.M. to nondisabled children; and, finally, by improperly assessing the credibility of M.E.M.'s parents. *See id.* at 20-25. The Court addresses each issue in turn.

### A)  Objections regarding the domain of acquiring and using information.

As the Magistrate Judge set forth: "[t]he functional domain of acquiring and using information considers how well a child acquires or learns information and how well she uses the information she has learned. *Doc. 30* at 7 (citing 20 C.F.R. § 416.926a(g)). The ALJ found that M.E.M. has a less than marked impairment in this domain, relying on the "weight [he] accorded to the opinions of Drs. Gucker, Aase, Brady, and Blacharsh, as corroborated by the observations

---

[2] The Magistrate Judge set forth the basic standards governing disability claims by children. The Court presumes the parties are familiar with these standards, and does not repeat them here.

of her teachers and school records." *AR* at 23. The ALJ, in turn, gave "significant weight" to Drs.

Gucker and Aase's opinion and "some weight" to Drs. Brady and Blacharsh's. *AR* at 21. All four

of these doctors opined that M.E.M. is less than markedly impaired in the domain of acquiring

and using information. *AR* at 21, 59-61, 71-73. The Magistrate Judge found that the ALJ "was

entitled to consider and rely on these opinions." *Doc. 30* at 9 (citing *Flaherty v. Astrue*, 515 F.3d

1067, 1071 (10th Cir. 2007)). Plaintiff objects to the Magistrate Judge's finding for several

reasons.

 First, Plaintiff accuses the Magistrate Judge of "backwards reasoning," insofar as "[t]he

ALJ must consider the treatment evidence first, and then must decide whether that evidence is

consistent with the non-examining evidence." *Doc. 31* at 1. Plaintiff does not distinguish or even

mention the Magistrate Judge's reliance on *Flaherty*, where the Tenth Circuit explicitly held that

"[t]he non-examining physician's opinion is an acceptable medical source, which the ALJ was

entitled to consider." *Flaherty*. 515 F.3d at 1071. Instead, Plaintiff cites to *Goatcher v. U.S. Dept.

of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995), for the proposition that "[w]hen

a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to

examine the other physicians' reports to see if they outweigh the treating physician's report, not

the other way around." *See Doc. 31* at 21. Plaintiff's citation to *Goatcher* undermines her

argument, as she points to no treating source that the ALJ should have examined the non-

examining physicians' opinions against. *See Doc. 31* at 1-10.

 Plaintiff next argues that "[t]he Magistrate Judge's reasoning is not consistent with the

law" because the ALJ did not rely on regulatory factors when giving Drs. Gucker and Aase's

opinions significant weight, "but merely describe[d] the definition of a non-examining doctor

and what their duties are." *Doc. 31* at 2. The regulatory factors Plaintiff references include: the

examining relationship, treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, the specialization of the medical source, and any "other factors" which tend to support or contradict the medical opinion. 20 C.F.R. § 416.927(c)(1)-(6). As the Magistrate Judge set forth, one such "other factor" is "the amount of understanding of our disability programs and their evidentiary requirements." *Doc. 30* at 8-9 (quoting 20 C.F.R. § 416.927(c)(6)). Another is "the extent to which a medical source is familiar with the other information in your case record." *Id.* In giving "significant weight" to Drs. Gucker and Aase's opinions, the ALJ stated that "[t]hese doctors reviewed [the] evidence and are familiar with Social Security disability standards." *AR* at 21.[3] Plaintiff objects that these reasons "are not regulatory factors[.]" *Doc. 31* at 2. Having independently studied the regulations, quoted above, the Court disagrees.[4]

Plaintiff next "objects to the Magistrate Judge's reliance on the regulatory language that the non-examining consultants are 'highly qualified and experts in Social Security disability evaluation.'" *Doc. 31* at 2-3 (quoting *Doc. 30* at 8, in turn quoting 20 C.F.R. § 416.913a(b)(1)). Plaintiff's objection is confusing. Was the Magistrate Judge to ignore this regulatory language? The quoted provision states, in full: "Administrative law judges are not *required* to adopt any prior administrative medical findings, but they *must* consider this evidence according to §§ 416.920b, 416.920c, and 416.927, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability

---

[3] The ALJ did not completely rely on the opinions, however, because "their opinions are inconsistent with the record as a whole regarding the Claimant's ability to care for herself and her health and physical well-being and slightly overstate the Claimant's limitations in these areas." *AR* at 21. Plaintiff chooses not to focus on this additional statement when attacking the Magistrate Judge's reasoning, even though it clearly touches upon the regulatory factor of consistency with the record as a whole.

[4] Plaintiff cites *McDaniel v. Social Security Administration*, a decision by Magistrate Judge Fouratt, in support of her position that this language is insufficient. *See Doc. 31* at 2 (citing CIV 16-0226, *Doc. 19*, filed July 12, 2017). The Court finds that case to be distinguishable, as the language was used to describe multiple opinions and was clearly boilerplate. *See id.* at 25.

evaluation." 20 C.F.R. § 416.913a(b)(1) (emphasis added). As discussed above, this is precisely what the ALJ did in this case, by weighing the opinions against the regulatory factors. The regulation itself also forecloses Plaintiff's argument, that "[t]he record is silent about Drs. Gucker and Aase's education," etc. *See Doc. 31* at 3.

Plaintiff's next objection targets the Magistrate Judge's affirmance of the ALJ's decision to rely on M.E.M.'s school records in finding her less than markedly limited in this domain. *Doc. 31* at 3. More specifically, Plaintiff argues that the ALJ erred in relying on the non-examining doctors' opinions because her accommodations at school "refute[] the ALJ's finding." *Doc. 31* at 3. The relevant period is from October 2013, when Drs. Gucker and Aase rendered their opinion, through the present. *See AR* at 61. Plaintiff cites to M.E.M.'s accommodations, arguing that the Magistrate Judge erred by failing to discuss evidence from when M.E.M. was in the seventh grade, as well as M.E.M.'s inability to recall her address at the hearing. *See Doc. 31* at 3-4. Plaintiff's argument was effectively rejected in *Miller ex rel. Thompson v. Barnhart*, 205 F. App'x 677 (10th Cir. 2006) (unpublished). There, as here, the record supported the inference that the child's impairments required accommodations, affected her ability to learn, and that she struggled particularly in mathematics. *Id.* at 680. The record did not, however, "compel a finding that her limitations [were] necessarily 'marked' rather than 'moderate'" because there was evidence that the child could learn and use the information she has learned, and "three consulting sources rated her with 'less than marked' limitations in this domain." *Id.* at 681. As such, the Tenth Circuit found substantial evidence supported the ALJ's finding and affirmed, "even though [they] might have made a different findings were [they] the factfinders." *Id.* (citing *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002)). The Court reaches the same result in this case. Here, the ALJ permissibly relied on the consultant's findings and on M.E.M.'s school records to

find her not disabled. While there is evidence that supports Plaintiff's posture, the Court is not in a position to reweigh the evidence when substantial evidence (more than a mere scintilla) supports the ALJ's decision. *White v. Berryhill*, 704 Fed. Appx. 774, 776 (10th Cir. 2017) (unpublished) ("Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

Plaintiff's argument also ignores evidence that M.E.M. is not as limited as she contends. Indeed, as the Magistrate Judge explained, the most recent reports from M.E.M.'s teachers indicate that M.E.M. is *only* limited in her ability to acquire and use information in the area of mathematics. *See Doc. 30* (citing *AR* at 191-200). And, as the Magistrate Judge pointed out, M.E.M.'s limitations in math may have little to do with her impairments. *Id.* (citing *AR* at 271, 277). In fact, in a December 2015 report, M.E.M.'s math teacher opined that M.E.M. "can be a strong student in the math content subject she's taking," but that preoccupation with another student and tardiness to class were contributing factors to M.E.M.'s low grade that quarter. *AR* at 271-277. As stated in the pertinent Social Security Ruling, the Administration does "not consider limitations that are associated with academic underachievement by a student who does not have a physical or mental impairment that accounts for the limitations." SSR 09-3p, 2009 WL 396025 at *4.

Plaintiff effectively ignores this evidence, objecting to the Magistrate's conclusion that M.E.M. was only limited in her ability to acquire and use information in the area of mathematics in 2014. But that conclusion was M.E.M.'s teacher's, not the Magistrate Judge's. *Doc. 30* at 10 (citing *AR* at 191-200); *see AR* at 192 (stating that the teacher's grading scale for this domain is relevant to "'math only' since that is [M.E.M.]'s only exceptionality."). Nonetheless, Plaintiff

argues M.E.M.'s "functioning is markedly limited across all subject matter, as the need for excessive accommodation shows." *Doc. 31* at 4 (citing *AR* at 252, 255). However, "[t]he fact that you do or do not receive special education services does not, in itself, establish your actual limitations or abilities." 20 C.F.R. § 416.924a(b)(7)(iv). Moreover, the Court disagrees that M.E.M. is subject to "excessive accommodation," as she is in a regular classroom for 86% of the school day. *AR* at 257. In sum, the evidence Plaintiff points to does not overwhelm the ALJ's finding that M.E.M.'s teacher "emphasized that math is the only area of exceptionality for the claimant." *AR* at 19; *see, e.g.*, *Taylor v. Berryhill*, 679 Fed. Appx. 661, 664 (10th Cir. 2017) ("[T]he evidence that Taylor claims the ALJ ignored doesn't contradict or overwhelm the substantial evidence in the record[.]").

Plaintiff next "objects to the Magistrate Judge's finding that the ALJ properly relied upon the observations of [M.E.M.'s] teachers and school records." *Doc. 31* at 4 (citing PFRD at 10). Plaintiff's objection is rejected. The regulations explicitly require ALJs to consider "[h]ow you function in school" when assessing functional equivalence. *See* 20 C.F.R. § 416.926a(a)(2); 20 C.F.R. § 416.924a(b)(7)(ii)-(iv). The fact that M.E.M.'s "teachers sometimes assessed M.E.M. in her accommodated setting," *Doc. 31* at 4, is also contemplated by the regulations. *See* 20 C.F.R. § 416.924a(b)(7)(iv) ("[W]e will consider that good performance in a special education setting does not mean that you are functioning at the same level as other children your age who do not have impairments."). As such, the ALJ and Magistrate Judge did not commit error in their discussion of M.E.M.'s school-based accommodations.

Plaintiff next "objects to the Magistrate Judge's finding that the ALJ did not err by reviewing evidence generically in the beginning of the decision, but not providing a specific analysis of the evidence in the section of the decision devoted to this domain." *Doc. 31* at 6

(citing PFRD at 10-11). In making this finding, the Magistrate Judge relied on the recent, though unpublished, decision in *Taylor v. Berryhill*, 679 Fed. Appx. 661, 664 (10th Cir. 2017). There, the court rejected Plaintiff's argument because "this argument relies on a faulty description of the ALJ's decision. True, in the ALJ's specific discussion of the attending-and-completing-task domain, the ALJ only referenced Faulk's evidence, but at the outset of her global discussion of all six domains, the ALJ discussed in detail all of the substantial evidence supporting her functionality and domain findings." *Id.* Plaintiff argues that *Taylor* is distinguishable from this case, "because in that case the ALJ provided a detailed discussion of the evidence that specifically found less than marked, or no limitation of the domain in question. In M.E.M.'s case the evidence the ALJ discussed was **not** evidence that M.E.M. had a less than marked limitation, but was evidence that supports Ms. Panas' claims." *Doc. 31* at 6. Plaintiff's argument is rejected. The Court cannot distinguish *Taylor* from the present facts, and Plaintiff's argument to the contrary asks the Court to reweigh the evidence, which it cannot do. *Taylor*, 679 F. App'x at 664 (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)).

Plaintiff next "objects to the Magistrate Judge's finding that the ALJ properly applied the regulatory factors in weighing Dr. Krueger's findings of marked limitation" in this domain. *Doc. 31* at 7. The ALJ discussed Dr. Krueger's opinion as follows:

> Dr. Krueger performed a consultative examination on the Claimant on October 19, 2013. Exh. 6F. The doctor stated the Claimant had a marked impairment with her arithmetic and reading. He concluded she had serious learning problems and significant problems with depression. The doctor's opinion also contains an opinion regarding the Claimant's ability to work. Because my decision does not address the Claimant's ability to work, I give his opinions regarding the Claimant's ability to work no weight. The doctor's opinion is a snapshot of the Claimant's condition at one time and he did not review other evidence. In light of these limitations, I find that his opinion that the Claimant suffers from a marked impairment in arithmetic and reading overstates the Claimant's limitations and accord his opinion some weight.

*AR* at 20. Plaintiff argues the ALJ's treatment of Dr. Krueger's opinion is contrary to law. *Doc. 31* at 8-9. The Magistrate Judge agreed that, ordinarily, an ALJ should not discount a consultative examination on the basis that it is a one-time examination. *See Doc. 30* at 12 (citing *Chapo v. Astrue*, 682 F. 3d 1285, 1291 (10th Cir. 2012)); *see also Quintero v. Colvin*, 642 Fed. Appx. 793, 796 (10th Cir. 2016) ("*Chapo* clearly prohibits an ALJ from per se rejecting an examining medical source's opinion."). However, the Magistrate Judge also recognized that, in a child's case, the Administration "need[s] evidence that is sufficient to evaluate a child's limitations on a longitudinal basis; that is, over time." *See Doc. 30* at 13 (quoting SSR 09-2p, 2009 WL 396032 at *2). As such, the Magistrate Judge affirmed the ALJ's decision in this case, and distinguished *Chapo* on the basis that the ALJ did not reject Dr. Krueger's opinions and provided additional reasons for giving less weight to Dr. Krueger's findings. *Doc. 30* at 12-13. The Court agrees with the Magistrate Judge that the ALJ's analysis was permissible in this child's case.

While the lack of a treating relationship is not grounds for simply rejecting an opinion, it is relevant to the weight to be afforded to an opinion. *See Crowder v. Colvin*, 561 F. App'x 740, 743 (10th Cir. 2014); 20 C.F.R. § 416.927(c)(2)(i). Here, the ALJ did not reject Dr. Kruger's opinion, but gave it "some" weight, partially on the basis that Dr. Krueger did not have a treating relationship with M.E.M. There is nothing improper about this decision in the abstract. Furthermore, as the Magistrate Judge notes, this was not the only reason the ALJ gave less weight to Dr. Krueger's opinion. Rather, in addition to the evaluation only representing a "snapshot" of M.E.M.'s functioning, the ALJ discounted Dr. Krueger's examination on the grounds that he did not understand the purpose of the evaluation (he purported to examine M.E.M.'s ability to work, which was not at issue), and that he had not reviewed the record. *AR* at

20. As the Magistrate Judge explained, a consultant's opinion may properly be discounted when it is inconsistent with the record and where the consultant has not reviewed the entire record. *See Doc. 30* at 13 (citing *Thomas v. Berryhill*, 685 F. App'x 659, 663 (10th Cir. 2017)). Indeed, in *Thomas*, the Tenth Circuit rejected a claimant's argument that certain doctors should be given more weight where they did not review the entire medical record and their findings were inconsistent with other medical opinions in the longitudinal record. *See id.* at 663.

Plaintiff argues that *Thomas* is distinguishable because, here, "[t]here were no contrary records that Dr. Krueger did not see[.]" *Doc. 31* at 9. Moreover, she argues, Dr. Krueger administered standardized testing that was consistent with the observation of M.E.M.'s educators. *Id.* The Administration anticipated Plaintiff's arguments when implementing the regulations insofar as it "will not rely on any test score alone. No single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain." 20 C.F.R. § 416.926a(e)(4). Thus, the fact that Dr. Krueger administered standardized testing to M.E.M. is irrelevant, so long as his opinion was properly weighed by the ALJ. The Court finds that it was in this case.

Plaintiff's final argument as to Dr. Krueger is that the Administration was responsible for providing M.E.M.'s background related to her condition to him, rendering the ALJ's reasoning that he did not review the entire record to be, at best, unfair. *See Doc. 31* at 9 (citing 20 C.F.R. § 404.1517). Putting aside the fact that this set of regulations is inapplicable here, the Magistrate Judge addressed the correct regulation (20 C.F.R. § 416.917) which states, in pertinent part, that the Administration "will also give the [consultative] examiner any necessary background information about your condition." *Doc. 30* at 13 (citing 20 C.F.R. § 416.917). As the Magistrate Judge noted, this does not mean that the Administration will provide a consultative examiner

with the entire case record. *Doc. 30* at 13. More to the point, Plaintiff ignores the fact that Dr. Krueger's examination occurred in 2013, whereas the ALJ had before him more recent evidence and the benefit of the entire case record. *Compare Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009) (affirming an ALJ's decision to discount an examining opinion on the basis of inconsistencies with more recent records). In other words, even if the Administration had provided the entire record to Dr. Krueger at the time he rendered his opinion, the ALJ might still be justified in finding that it failed to account for developments in M.E.M.'s more recent school records.

Finally, Plaintiff objects to the Magistrate Judge's finding that the ALJ did not err in assessing the weight to be given to Dr. Lang's opinion, rendered in 2007 when M.E.M. was seven. *See Doc. 31* at 10. The ALJ gave Dr. Lang's opinion "significant weight" because it was consistent with the record as a whole and he is familiar with Social Security disability standards. *AR* at 20. Plaintiff's briefing before the Magistrate Judge failed to articulate how this finding was error. *See Doc. 22* at 14-16; *Doc. 28*. Accordingly, the Magistrate Judge found "no reversible error merely because the ALJ failed to specifically address Dr. Lang's report when discussing" this domain. *Doc. 30* at 14. Plaintiff now argues that the Magistrate Judge failed to discuss "long-standing deficits" in Dr. Lang's report, which purportedly "show that M.E.M. could not learn information readily, and could not use information she had learned in practical and everyday situations." *Doc. 31* at 10 (citing SSR 09-3p). The Court is not persuaded that the Magistrate Judge erred. Even assuming the worst from Dr. Lang's report, *see AR* at 283-287, Plaintiff has pointed to no evidence that M.E.M. continues to be affected by her limitations as Dr. Lang found. Rather, as the Magistrate Judge and ALJ note, M.E.M.'s Individual Education Plans showed an upward trend in her performance. *See Doc. 30* at 10; *AR* at 20.

**B) Objections regarding the domain of attending and completing tasks.**

As the Magistrate Judge explained, [t]he functional domain of 'attending and completing tasks' considers how well a child is able to focus and maintain attention, and how well she begins, carries through, and finishes activities, including the pace at which she perform[s] activities and the ease with which she changes them." *Doc. 30* at 14 (citing 20 C.F.R. § 416.926a(h)). Plaintiff takes no issue with the Magistrate Judge's description of this domain, even approving of his notation "that becoming frustrated and giving up is a hallmark of limited functioning in this area." *Doc. 31* at 11 (citing PFRD at 15).[5] Nonetheless, Plaintiff objects to the Magistrate Judge's conclusion that the ALJ committed no reversible error when assessing this domain. *Id.*

The ALJ concluded that M.E.M. has "less than marked limitation in attending and completing tasks." *AR* at 23. In support of this finding, the ALJ credited the reports of Drs. Gucker, Aase, and Lang "as corroborated by the observations of [M.E.M.'s] teachers and school records." *Id.* In objecting to this finding, Plaintiff points to evidence ranging from when M.E.M. was seven until the ninth grade. *See Doc. 31* at 11-12. Plaintiff does not assert that the ALJ ignored this evidence, and the Court presumes he considered it. *See AR* at 19-21 (discussing Dr. Lang's opinion and M.E.M.'s school records). Nonetheless, Plaintiff "objects to the Magistrate Judge's statement that she 'rehashes the evidence and asks the Court to reweigh it," *Doc. 31* at 12, but this is precisely what Plaintiff is asking the Court to do. Again, as long as the ALJ's decision is supported by substantial evidence, this Court is bound to affirm his decision. The Court has reviewed the evidence that the ALJ relied on, and finds that it is.

---

[5] Plaintiff's approval ignores other regulatory language, directly preceding that quoted by the Magistrate Judge, which states that "the examples do not necessarily describe a 'marked' or 'extreme' limitation." 20 C.F.R. § 416.926a(h)(3).

The Court rejects Plaintiff's objection "to the Magistrate Judge's finding that the ALJ's discussion of the evidence was sufficient" as to this domain. *Doc. 31* at 13. As with her argument as to the first domain, this argument's premise presupposes that there was evidence before the ALJ that was ignored. However, Plaintiff has failed to show that the ALJ ignored the evidence she relies on. As such, the ALJ's formulation of his opinion is not subject to reversal. *Taylor v. Berryhill*, 679 F. App'x 661, 664 (10th Cir. 2017). As the Tenth Circuit has stated, "[w]here, as here, [the Court] can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

Finally, Plaintiff objects to the Magistrate Judge's conclusion that the ALJ's treatment of consultative examiner Dr. Gabaldon's opinion, which found M.E.M. to have a marked impairment in this domain, was supported by substantial evidence. *Doc. 31* at 14. The ALJ rejected Dr. Gabaldon's opinion because he did "not give a detailed explanation for his conclusions and his opinion varies greatly from the record as a whole." *AR* at 20. Plaintiff objects that these reasons are not legally sufficient. However, having reviewed the applicable regulations and Dr. Gabaldon's opinion, the Court agrees with the Magistrate Judge that the ALJ's "reasons touch upon the supportability of the opinion as well as its consistency with the record." *Doc. 30* at 16 (citing 20 C.F.R. §§ 416.927(c)(3), 416.927(c)(4)). As such, the Court will not reverse the ALJ on this ground.

### C) Objections regarding the domain of health and physical well-being.

As the Magistrate Judge recited, in this domain, "the Administration considers the cumulative physical effects of physical or mental impairments and their associated treatments or

therapies on a child's functioning." *Doc. 30* at 16 (citing 20 C.F.R. § 416.926a(l)). The ALJ found that M.E.M. has no limitation in this domain, relying on the opinions of Drs. Gucker, Aase, Blacharsh and Brady. *AR* at 27. Plaintiff objects to the Magistrate Judge's "abrupt" dismissal of her claim in this domain, claiming that conclusion is contrary to law, "because M.E.M. has been diagnosed with the following medically determinable impairments: Anxiety Disorder, Learning Disorder, obesity, and speech and language problems." *Doc. 31* at 15. As the Magistrate Judge pointed out, it was the ALJ who identified these impairments and found them to be medically determinable under the regulations. *Doc. 30* at 17. As such, the Magistrate Judge posited that "the mere existence of a medically determinable impairment, or even a combination of impairments, is not enough to alone render a claimant disabled." *Doc. 30* at 18 (citations omitted).

Plaintiff objects, arguing that "[i]t is the fact that the ALJ found several medically determinable impairments that lays the groundwork for Ms. Panas' claim that M.E.M. has a marked limitation in this domain." *Doc. 31* at 16. Under the regulations,

> When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, [the Administration] must then evaluate the intensity and persistence of your symptoms so that [it] can determine how your symptoms limit your capacity for work or, if you are a child, your functioning.

20 C.F.R. § 416.929(c)(1). As such, the presence of a medically determinable impairment is the starting place for determining whether a child's functioning is affected by her symptoms. *See* 20 C.F.R. § 416.924(b)(2) ("Your limitations in functioning must result from your medically determinable impairment(s)."); SSR 09-8P, 2009 WL 396030 at *3 ("As with limitations in any domain, we do not consider a limitation in the domain of 'Health and physical well-being' unless it results from a medically determinable impairment(s)."). Thus, the Court agrees with the

Magistrate Judge that proving the existence of a medically determinable impairment is not, by itself, sufficient to demonstrate that a child's impairments functionally equal a listing.

Of course, Plaintiff points to evidence that "M.E.M. reported fatigue, somatic complaints, and changes in eating habits" as well as diagnoses of depression by Dr. Krueger and the fact that M.E.M. "wept during much of her testimony at the hearing which is not normal behavior[.]" *Doc. 31* at 16. Plaintiff's position ignores that these examples of such complaints "do not necessarily describe a 'marked' or 'extreme' limitation[]" under the regulations. 20 C.F.R. § 416.926a(l)(4). Plaintiff's position also presupposes that the ALJ ignored this evidence, which is not apparent from the ALJ's decision. *See AR* at 19-22.

Plaintiff next objects to the ALJ's reliance on Drs. Blacharsh and Gucker's opinions because they were "apparently … unaware that a psychological impairment is considered in the domain of health and well-being." *Doc. 31* at 17. In reviewing M.E.M.'s records, these doctors noted no limitation in this domain in the areas of psychology and psychiatry. *See AR* at 61, 73. Dr. Gucker relied on a teacher's questionnaire ("TQ") at the initial stage of review, and Dr. Blacharsh noted that there were "no new allegations or worsening physical impairments" on reconsideration. *Id.* Plaintiff contends that these findings were error because "SSR 09-8p required Drs. Blacharsh and Gucker to 'consider the cumulative physical effects of physical and mental impairments and their associated treatments on a child's health and functioning.'" *Doc. 31* at 17. While the Court agrees, Plaintiff points to no evidence that these doctors did not follow their duty to do so in this case. Rather, Plaintiff again asks the Court to reweigh the evidence, which it cannot do.

Finally, Plaintiff "objects to the Magistrate Judge's complete failure to address her claim regarding the ALJ's assessment of the weight to the opinion of Penny J. Davies, Ph.D., LPCC,

that M.E.M.'s depression affected her ability to progress in school and in life[.]" *Doc. 31* at 17. The Magistrate Judge discarded Plaintiff's undeveloped argument as to Dr. Davies on the ground that the ALJ expressly weighed and addressed her opinion in his decision. *See Doc. 30* at 18. While the Court would have preferred that the Magistrate Judge engage in slightly more of an analysis as to Dr. Davies, specifically, the Court finds no error in the ALJ's treatment of her opinion.

After summarizing it, ALJ addressed Dr. Davies' opinion as follows: "Dr. Davies' assessment that the Claimant is three to four years behind her peers is not supported by the record. However, her opinion and notes provide valuable insight into the way she interacts with others and her psychiatric condition. Therefore I accord her opinion some weight." *AR* at 21. Plaintiff's briefing before the Magistrate Judge did not specifically argue that the ALJ erred in weighing this opinion; rather, she noted M.E.M.'s complaints that "she feels different from other adolescents at school because she is in special education" that she "did not like school" and that Dr. Davies opined that "M.E.M.'s depression affected her ability to progress in school and life[.]" *Doc. 22* at 20; *Doc. 28* at 6. These observations are far from an argument targeting the ALJ's analysis. However, even liberally construing Plaintiff's argument, the ALJ clearly looked to the regulatory factors when assessing the consistency of Dr. Davies' opinion with the record as a whole while valuing them for the insight they provided. *AR* at 21; *compare* 20 C.F.R. § 416.927(c)(4). As such, the Court will not reverse the ALJ on this ground.

### D) Objection regarding the ALJ's failure to consider the "whole child."

As the Magistrate Judge explained, "[t]he 'whole child' approach is a 'technique for determining functional equivalence,' which 'accounts for all of the effects of a child's impairment singly and in combination.'" *Doc. 30* at 18 (quoting SSR09-1p, 2009 WL 396031 at

*2). The Magistrate Judge found that the ALJ properly considered the effects of M.E.M.'s impairments under this standard. *Doc. 30* at 18. Plaintiff objects, specifically complaining that the Magistrate Judge failed to "assess the evidence regarding M.E.M.'s extensive need for accommodations, her deepening depression, and his failure to assess how appropriately, effectively, and independently she functions compared to children the same age who do not have impairments." *Doc. 31* at 18 (citations omitted). However, the Court agrees with the Magistrate Judge that the ALJ considered this evidence and, accordingly, properly complied with the regulatory requirement of considering the "whole child." *See Doc. 30* at 18-20.

### E) Objections regarding the ALJ's failure to compare M.E.M. to non-disabled children.

Plaintiff "claims the ALJ violated controlling law by failing to consider that M.E.M.'s functioning when compared to other children supports her claim of disability." *Doc. 31* at 19. After recognizing that Plaintiff's argument relied on a stale version of the regulations, the Magistrate Judge agreed that ALJs must "look at how appropriately, effectively, and independently the child performs her activities compared to the performance of other children of the same age who do not have impairments." *Doc. 30* at 22 (citing 20 C.F.R. § 416.926a(b)). The Magistrate Judge concluded, however, that the ALJ complied with this requirement. *Doc. 30* at 24.

Plaintiff objects, asserting that the ALJ and Magistrate Judge ignored M.E.M.'s special accommodations at school, which "are significant evidence that M.E.M.'s education is different from students who are not disabled." *Doc. 31* at 20. The Court disagrees. As the Magistrate Judge recognized, "the Administration directs ALJs to review 'all of the evidence in the case record to determine whether a child is disabled,' including … any evaluations and records maintained by the child's early intervention and school programs (such as Individualized

Education Plans (IEPs)), to ensure that an adequate picture of the child's functioning as compared to her peers is attained." *Doc. 30* at 23 (citing SSR 09-2p, 2009 WL 396032 at *4). To this end, the ALJ reviewed M.E.M.'s IEPs and school grades, recognizing that she is currently ranked 15 of 35 students *despite* her special accommodations. *AR* at 20. As such, the Court finds that the ALJ properly considered evidence of M.E.M.'s accommodations when comparing her to other children. Plaintiff's arguments to the contrary again ask the Court to assess the evidence in the first instance and re-weigh it, which is beyond this Court's prerogative.

### F) Objections regarding the ALJ's improper assessment of the credibility of parental testimony.

Plaintiff's final objection to the Magistrate Judge's conclusions targets his finding that the ALJ properly assessed the credibility of M.E.M.'s parents. *Doc. 31* at 21. Relying on *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001), and *Knight ex rel P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014), Plaintiff argues that the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying, and that the ALJ failed to do so in this case. *Id.* at 22. The Magistrate Judge rejected Plaintiff's claim, reasoning that "the ALJ appropriately compared Plaintiff's allegations with objective medical evidence of record, including M.E.M.'s own testimony." *Doc. 30* at 27 (citing *AR* at 19, 149-157, 201-209). Having independently reviewed the ALJ's credibility findings, the Court agrees with the Magistrate Judge.

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence in the record[.]" *Adams ex rel. D.J.W. v. Astrue*, 659 F. 3d 1297, 1302 (10th Cir. 2011) (citation omitted). In *Adams*, the Tenth Circuit affirmed an ALJ's credibility finding as to parental testimony because it was affirmatively linked to hearing testimony and other evidence of record.

*Id.* The Court reaches the same result here. Here, the ALJ effectively rejected both Plaintiff and M.E.M.'s father's testimony that she is disabled as a matter of law "because the credible medical evidence and the record as a whole does not support the extent of the claimed limitations" and because their statements "certainly do[] not outweigh the accumulated medical evidence regarding the extent to which the Claimant's impairments limit her functional abilities." *AR* at 22. The ALJ made this finding after discussing all of the evidence, which included Plaintiff and M.E.M.'s testimony, as well as all of the medical evidence in the file. *See AR* at 18-22. The Court agrees with the Magistrate Judge that this review of the evidence was sufficient to demonstrate that the ALJ properly considered parental testimony in this case. *See Miller ex rel. Thompson v. Barnhart*, 205 F. App'x 677, 681 (10th Cir. 2006) (unpublished) ("Mrs. Miller disputes the ALJ's view of the evidence and relies on evidence to the contrary, but again, it is not this court's task to reweigh the evidence.").

Finally, Plaintiff objects to the ALJ's finding that M.E.M.'s father's "statement may be influenced by family loyalty and he may have a financial interest in his daughter being awarded benefits." *AR* at 22. Plaintiff asserts that such a reference is "clear legal error," requiring remand. *Doc. 31* at 23 (citing *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996); *Caldwell v. Sullivan*, 736 F. Supp. 1076, 1081 (D. Kan. 1990)). Despite the fact that these cases are not binding on this Court, they are distinguishable. In *Smolen*, the ALJ categorically rejected the testimony of multiple "family witnesses" on the ground that they were biased. *See id.* at 1289. The Ninth Circuit rejected this reasoning because the same could be said of any family member in any Social Security case. *Id.* However, the ALJ in this case did not rely solely on this reason, but rejected M.E.M.'s father's statement because it was inconsistent with the medical evidence. *See Nguyen v. Colvin*, 2015 WL 5032582, at *7 (D. Kan. Aug. 25, 2015) ("The ALJ's recognition of

the financial interest was not a decisive factor in the credibility assessment, as it was mentioned explicitly as an additional circumstance of note."). Likewise, in *Caldwell*, the ALJ rejected the claimant's testimony because she did not have a robust work history. The same cannot be said in this child's case.

### IV) CONCLUSION

Contrary to Plaintiff's objections, the Magistrate Judge correctly affirmed the ALJ's decision denying M.E.M. Supplemental Security Income benefits.

Wherefore,

IT IS HEREBY ORDERED that Plaintiff's objections are overruled, the Court adopts the Magistrate Judge's recommendations and denies Plaintiff's Motion to Reverse and Remand for Payment of Benefits or in the Alternative, for Rehearing, with Supporting Memorandum (*Doc. 22*). The Court will enter a final order pursuant to Rule 58 of the Federal Rules of Civil Procedure affirming the decision of the Acting Commissioner.

_____
CHIEF UNITED STATES DISTRICT JUDGE