IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

IRENE PANAS, on behalf of
M.E.M., a minor,

       Plaintiff,

v.                                                                               CIV 17-0364 WJ/JHR

ANDREW SAUL,
Commissioner of Social Security,

       Defendant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter comes before the Court on Plaintiff Irene Panas' Motion for Attorney Fees Pursuant to the Equal Access to Justice Act, with Supporting Memorandum [Doc. 44], filed October 18, 2019 and fully briefed on November 5, 2019. [*See* Doc. 45 (Commissioner's Response); Doc. 46 (Ms. Panas' Reply)]. In her Motion Ms. Panas seeks an award of attorney fees in the amount of $20,736.30 for work performed on her behalf before this Court and before the Tenth Circuit Court of Appeals. [*See* Doc. 44-1, pp. 1-4]. Pursuant to 28 U.S.C. § 636(b), this social security appeal was referred to me, a United States Magistrate Judge, by presiding Chief District Judge Johnson to recommend an ultimate disposition of the case. [*See* Doc. 24]. As is detailed below, this case is before the Court on remand from the Tenth Circuit Court of Appeals which reversed the Judgement and Memorandum Opinion and Order of Chief Judge Johnson, which adopted my Recommendation that Ms. Panas' Motion to Remand be denied. [*See* Doc. 22 (Motion to Remand); Doc. 30 (Report and Recommendation); Doc. 33 (Memorandum Opinion and Order); Doc. 34 (Final Judgment); Doc. 41 (Mandate)]. The merits of Ms. Panas' case are no longer before the Court because the Tenth Circuit reversed the Commissioner's Final Decision and

remanded M.E.M.'s claim to the Administration for further proceedings. [*See* Doc. 41 (Mandate); Doc. 42 (Final Order Remanding for Proceedings Consistent with the Mandate)]. What remains undecided is whether Ms. Panas is entitled to attorney fees for services rendered in prosecuting her case in federal court pursuant to the Equal Access to Justice Act ("EAJA"). Having reviewed the parties' thoughtful and articulate submissions, the relevant law, and the entire case docket, the undersigned **finds and recommends** that Ms. Panas' Motion should be **granted**.

## I.        INTRODUCTION

"[T]he Commissioner respectfully submits that, in light of the facts of this case and controlling Tenth Circuit precedent, a reasonable person could—and, in fact did—believe that the [Administrative Law Judge's ("ALJ's")] decision was sufficiently specific and supported by substantial evidence." [Doc. 45, p. 10]. This argument is tempting to accept given this Court's own prior findings before the Tenth Circuit's remand. [*See* Doc. 30 (Recommendation); Doc. 33 (Order Adopting Recommendation)]. However, after careful consideration of the Tenth Circuit's rationale as set forth in the Order and Judgment attached to its Mandate, I find that Ms. Panas' position is the better one. [*See generally* Doc. 46]. As Ms. Panas points out, a district court's affirmance of an ALJ's decision is not, by itself, grounds to find the Commissioner's position to be substantially justified in the face of an appellate remand. [*Id.*, p. 2]. More importantly, she shows that the ALJ's errors in this case, as found by the Tenth Circuit, were ones of clearly established law - not of fact. [*Id.*, pp. 3-8]. Having reviewed the relevant legal standards against the Tenth Circuit's Mandate, the Court is compelled to agree with Ms. Panas that its prior holding that the ALJ's decision was *factually* supported by substantial evidence matters little in the face of the Tenth Circuit's declaration of clear *legal* violations. Therefore, because the Commissioner's position cannot be

substantially justified for the purposes of the EAJA under the law of this circuit, Ms. Panas' Motion for her attorney fees should be granted.

## II. RELEVANT LAW

### A. Determining Disability (as defined by the Social Security Act) in Children

An individual under the age of eighteen (a child) is disabled for the purposes of receiving Supplemental Security Income benefits under the Social Security Act if she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[,]" 42 U.S.C. § 1382c(a)(3)(C)(i); and she is not engaged in "substantial gainful activity."[1] 42 U.S.C. § 1382c(a)(3)(C)(ii); *see also* 20 C.F.R. § 416.906 (basic definition of disability for children). The Commissioner uses a three-step sequential evaluation process to determine whether a child is disabled. *See* 20 C.F.R. § 416.924(a); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001). At the first step, the assigned ALJ must ensure that the child is not engaged in substantial gainful activity. *Id.* At the second, the ALJ examines whether "the child has an impairment or combination of impairments that is severe." *Briggs*, 248 F.3d at 1237. If there are no severe impairments, the child is not disabled. 20 C.F.R. § 416.924(c). Finally, at the final step the ALJ determines whether the child's impairment(s) "meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404." *Briggs*, 248 F.3d at 1237; 20 C.F.R. § 416.924(d).

"In making the third determination—whether a child's impairment meets or equals a listed impairment—the ALJ must consider whether the impairment, alone or in combination with another

---

[1] "Substantial gainful activity means work that— (a) Involves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 416.910; *see also* 20 C.F.R. § 416.972 (defining substantial work activity and gainful work activity).

impairments, 'medically equals, or functionally equals the listings.'" *Briggs*, 248 F.3d at 1237 (citing 20 C.F.R. § 416.924(a)). If a child's impairments do not "medically" equal the listings, *see* 20 C. F. R. § 416.926, they may still "functionally" equal a listing. *See* 20 C.F.R. § 416.926a. To "functionally equal the listings" a child's "impairment(s) must be of listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain[.]" 20 C.F.R. § 416.926a. "Domains are broad areas of functioning intended to capture all of what a child can or cannot do." SSR 09-1P, 2009 WL 396031 at *1. The six applicable domains of functioning are:

> (i) Acquiring and using information;
>
> (ii) Attending and completing tasks;
>
> (iii) Interacting and relating with others;
>
> (iv) Moving about and manipulating objects;
>
> (v) Caring for yourself; and,
>
> (vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi).

When the Administration considers whether a child has "marked" or "extreme" limitations in any domain, it examines "all the information [it has] in [the child's] case record about how [the child's] functioning is limited because of [her] impairment(s), and [it] compare[s] [the child's] functioning to the typical functioning of children [her] age who do not have impairments." 20 C.F.R. § 416.926a(f)(1).

### B. Determining Whether to Award Fees Under the Equal Access to Justice Act

"Under EAJA, a fee award is required if: (1) plaintiff is a 'prevailing party'; (2) the position of the United States is not 'substantially justified'; and (3) there are no special circumstances that

4

make an award of fees unjust." *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (citing 28 U.S.C. § 2412(d)(1)(A)). Clearly, the first factor is met, as Ms. Panas successfully obtained a reversal and remand to the Administration. *See Hackett*, 475 F.3d at 1168. The Court further finds that there are no special circumstances that makes an award of fees unjust in this case. The issue the case turns on is whether the Commissioner's position, both before the Administration and before the federal courts, was substantially justified.

The government (here the Commissioner) bears the burden of establishing that its position was substantially justified. *Hackett*, 475 F.3d at 1172. The "position of the United States" as defined by the EAJA, means not only the position taken in the federal civil action, but also, "the action or failure to act by the agency upon which the civil action is based." *Hackett*, 475 F.3d at 1172 (quoting 28 U.S.C. § 2412(d)(2)(D)). "Consequently, in opposing the EAJA motion, the Commissioner must show not only that his litigation position in defending the ALJ's legal error was substantially justified, but also that the initial legal error by the agency was substantially justified." *Chester v. Apfel*, 1 F. App'x 792, 794 (10th Cir. 2001) (unpublished). Thus, "fees generally should be awarded where the government's underlying action was unreasonable even if the government advanced a reasonable litigation position." *Hackett*, 475 F.3d at 1174 (quoting *United States v. Marolf*, 277 F.3d 1156, 1159 (9th Cir. 2002)).

"The test for substantial justification in this circuit is one of reasonableness in law and fact." *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995) (citing *Gutierrez v. Sullivan*, 953 F.2d 579, 585 (10th Cir. 1992), *cert. denied sub nom. Shalala v. Gutierrez*, 509 U.S. 933 (1993)). "The reasonableness test breaks down into three parts: the government must show 'that there is a reasonable basis for the facts alleged; that there exists a reasonable basis in law for the theory it propounds; and that the facts will reasonably support the legal theory advanced.'" *Gutierrez*, 953

F.2d at 585 (internal quotations omitted). In sum, "the government's position must be 'justified to a degree that could satisfy a reasonable person.'" *Hackett*, 475 F.3d at 1172 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

"The government's 'position can be justified even though it is not correct[,]'" *id.* (quoting *Pierce*, 487 U.S. at 566 n.2), but it is more likely to meet [the "substantially justified"] standard when the legal principle on which it relied is 'unclear or in flux.'" *Evans v. Colvin*, 640 F. App'x 731, 733 (10th Cir. 2016) (unpublished) (quoting *Martinez v. Sec'y of Health & Human Servs.*, 815 F.2d 1381, 1383 (10th Cir. 1987)). Importantly, "the fact that one other court agreed with the Commissioner, standing alone, does not establish that his position was substantially justified." *Chester*, 1 F. App'x at 794. Likewise, where the Tenth Circuit has remanded due to a clear legal error committed by the Administration, fees should only be denied to the plaintiff where the record reveals both a reasonable basis for the ALJ's legal error and the Commissioner's litigation position in defending it. *See, e.g.*, *Chester*, 1 F. App'x at 795 ("This was a glaring legal error, and the record reveals no reasonable legal basis for the ALJ's failure…. As a result, the Commissioner can not show that his position was substantially justified, either in making the initial legal error or in arguing in the ensuing litigation that there was no error.").

### III. **PROCEDURAL HISTORY**

Ms. Panas applied for supplemental security income benefits under the Social Security Act on M.E.M.'s behalf on August 9, 2013 (with a protective filing date of August 5, 2013). *AR* at 136-145.[2] The Administration denied the application initially and upon reconsideration, and Ms. Panas requested a *de novo* hearing before an ALJ. *AR* at 54-98. ALJ Barry O'Melinn ("the ALJ") held

---

[2] [Document 17-1 comprises the sealed Certified Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page].

an evidentiary hearing on December 4, 2015. *AR* at 33-53. On March 4, 2016, he issued an unfavorable decision, finding that M.E.M. is not disabled as defined in the Social Security Act. *AR* at 10-32. Ms. Panas filed a Request for Review with the Appeals Council, which the Council denied on January 26, 2017. *AR* at 1-8. As such, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

Ms. Panas appealed the ALJ's decision to this Court via a Complaint filed March 23, 2017. [*See* Doc. 1].[3] After full briefing and the statutory objections period, presiding Chief District Judge Johnson adopted my recommendation that the Commissioner's Final Decision be affirmed. [*See* Doc. 30 (Report and Recommendations); Doc. 33 (Order Adopting Recommendations)]. Ms. Panas appealed this Court's Judgement, and successfully convinced the Tenth Circuit to reverse the Commissioner's Final Decision and remand M.E.M.'s case for further administrative proceedings. [*See* Doc. 41]. The Tenth Circuit's Order and Judgment was issued August 5, 2019, and its Mandate was filed on September 27, 2019. [*Id.*]. Chief Judge Johnson entered a Final Judgment remanding the case to the Commissioner on October 2, 2019. [Doc. 42]. Ms. Panas filed her Motion for EAJA fees shortly thereafter. [*See* Doc. 44].

## IV.     THE COMMISSIONER'S FINAL DECISION DENYING M.E.M. BENEFITS AND THE TENTH CIRCUIT'S MANDATE REVERSING THAT DECISION

At the first step of the sequential evaluation process applicable to child claims, the ALJ found that M.E.M. has not engaged in substantial gainful activity since her application date. *AR* at 16. At the second, he determined that M.E.M. has the following severe impairments: "Anxiety, Affective Disorder, Learning Disorder, Obesity, and Speech and Language." *AR* at 16. At the third step, the ALJ concluded that M.E.M. "does not have an impairment or combination of impairments

---

[3] This Court had jurisdiction to review the Commissioner's Final Decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. §§ 416.1481, 422.210(a).

that meets or medically equals the severity of the listed impairments[.]" *AR* at 16-17. The ALJ also found that M.E.M.'s impairments do not functionally equal the severity of the listings because she "does not have an impairment of combination of impairments that result in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning." *AR* at 18-27. As such, the ALJ determined that M.E.M. is not disabled as defined by the Act and denied her claim for supplemental security income benefits. *AR* at 27.

On appeal to the Tenth Circuit, Ms. Panas successfully argued that the ALJ erred as a matter of law by: (1) failing to compare M.E.M. to non-disabled children; (2) failing to adequately assess three domains of functioning; and, (3) improperly assessing the credibility of M.E.M., Ms. Panas, and M.E.M.'s father. [*See* Doc. 41-1, p. 2]. As the Tenth Circuit explained, it viewed the ALJ's comparison of M.E.M. to non-disabled children as mostly a boilerplate recitation of the factors he was to consider devoid of substantive analysis explaining why M.E.M.'s "limitations in each domain as compared to her peers were less than 'marked.'" [Doc. 41-1, pp. 4-6]. The court then explained why it found the ALJ's analysis of the domain of Acquiring and Using Information to be "inadequate" - mostly because the ALJ failed to provide "legally sufficient" reasons for ascribing less evidence to an examining doctor's opinion as compared with those of "agency physicians who based their opinions solely on their review of M.E.M.'s records." [Doc. 41-1, pp. 6-11]. The court further admonished the ALJ for picking and choosing among medical reports and "using portions of evidence favorable to his position while ignoring other evidence." [*Id.*, p. 9 (quoted authority omitted)]. In sum, the court felt the ALJ should have more fully "assess[ed] and explain[ed] M.E.M.'s limitations in this domain in accordance with the governing legal standards." [*Id.*, p. 11].

The Tenth Circuit's discussion of the two other domains - attending and completing tasks, and health and physical well-being - likewise criticized the ALJ's failure to explain why non-examining agency physicians' opinions were elevated above those of examining doctors and why he ignored (or failed to provide legally sound reasons for rejecting) unfavorable evidence. [*Id.*, pp. 11-15]. Finally, the court concluded that the ALJ's negative credibility inferences were unsupported by legally adequate analysis, primarily because it found that the ALJ's credibility findings were mostly boilerplate statements of the relevant factors without substance, but also because the ALJ relied on legally improper factors (such as financial motive and family loyalty) when discounting M.E.M.'s father's statements concerning her abilities. [Doc. 41-1, pp. 15-17].

## V. ANALYSIS

The Commissioner's best argument in response to Ms. Panas' Motion for EAJA fees is that this Court found no legal error by the Administration and determined that "the ALJ's decision was sufficiently specific for judicial review and supported by substantial evidence." [Doc. 45, p. 1]. The Commissioner then submits "that he had a reasonable basis in both law and fact for arguing that the ALJ's decision was supported by substantial evidence and free from harmful legal error." [*Id.*, p. 3]. However, as Ms. Panas points out in her Reply, the Commissioner fails to explain how the legal errors the Tenth Circuit found were harmless. [*See* Doc. 46, pp. 2-9]. Thus, the Commissioner's demonstration that there was evidence supporting the ALJ's legally flawed analysis is neither helpful nor convincing: the Court agrees with Ms. Panas that the Tenth Circuit's focus in reversing the Commissioner's Final Decision here was the ALJ's failure to correctly apply relevant law.

As Ms. Panas points out, the Tenth Circuit found the ALJ's comparison of M.E.M. with other children to be not merely legally insufficient, but absent. [*Compare* Doc. 41-1, pp. 4-5 *with*

Doc. 46, p. 3]. This is a legal error, not one of substantial evidence. Likewise, Ms. Panas highlights the Tenth Circuit's distaste for the ALJ's abbreviated analysis when discussing the domains of function at issue, finding the ALJ's previous discussion of the evidence and apparent incorporation of that discussion into one-sentence analyses to be legally insufficient. [*Compare* Doc. 41-1, pp. 7, 11-12, 13 *with* Doc. 46, pp. 4, 6, 7]. Finally, Ms. Panas correctly points out that the Tenth Circuit reversed the ALJ's credibility findings, not merely because they were unsupported by substantial evidence, but because they consisted primarily of boilerplate assertions without any specific reference to the evidence (contrary to established law) and relied on legally inappropriate reasons for discounting the witness' credibility (also contrary to existing law). [*Compare* Doc. 41-1, pp. 15-17 *with* Doc. 46, p. 8].

The Commissioner does not argue, and the Court does not find, that any of the legal principles the Tenth Circuit relied on when reversing the Final Decision in this case were unclear or in flux. This should come as no surprise, as the Order and Judgment in this case was unpublished. [*See* Doc. 41-1, p. 1 n.1 (citing Fed. R. App. P. 32.1; 10th Cir. R. 32.1)]. As such, the Court is compelled to agree with Ms. Panas that the Commissioner's position for the purposes of her EAJA application was not substantially justified.

## VI.    RECOMMENDATION

Wherefore, for the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Ms. Panas' Motion for Attorney Fees Pursuant to Equal Access to Justice Act, with Supporting Memorandum [Doc. 44], be **granted** and that she be awarded attorney fees in the amount of **$20,736.30** as permitted by 28 U.S.C. § 2412, payable to Ms. Panas but mailed to her attorney, *see Astrue v. Ratliff*, 560 U.S. 586 (2010), because Ms. Panas is the prevailing party to this social

security appeal, the Commissioner has failed to show that the government's position was substantially justified, and no other circumstance makes an award of fees unjust.

**IT IS FURTHER RECOMMENDED THAT**, if Ms. Panas' counsel receives attorney fees under both the EAJA and 42 U.S.C. § 406(b) of the Social Security Act, counsel shall refund the smaller award to Ms. Panas pursuant to *Weakley v. Bowen*, 803 F. 2d 575, 580 (10th Cir. 1986).

_____
JERRY H. RITTER
U. S. MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).

**A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**